# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40719

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

NOEL CASTRO,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:09-CR-1839

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Noel Castro appeals the district court's denial of his motion to suppress drug evidence and his post-arrest statements. Finding no error, we AFFIRM.

I.

On December 4, 2009, in Starr County, Texas, Deputy Javier Longoria was driving home after his shift with the Sheriff's Office when he was flagged down by a man that he recognized. The man told Deputy Longoria that a

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

vehicle was going to be loaded with marijuana and that he could show Deputy Longoria the vehicle's location. Although the man had never provided information before, Deputy Longoria had known him for a while and considered him truthful and reliable.[1] Deputy Longoria drove the man north on FM 2360. The man pointed out the vehicle, a blue and white 18-wheeler with a tanker, sitting stationary in a small church parking lot; two or three men were standing around the vehicle. No other cars were in the lot. Deputy Longoria circled back, dropped the man off, and called fellow Starr County Sheriff's Officer Juan Guerra, who was on patrol, to advise him of the appearance and location of the tractor-tanker. While on the phone, the truck pulled out and started heading southbound on FM 2360. After relaying that information, Deputy Longoria told Officer Guerra to find probable cause to pull over the vehicle.

About fifteen minutes after the call, Officer Guerra spotted the tractor-tanker. Following the vehicle for approximately two to three miles, he noticed that its tail lights were covered with dirt and that the brake light on the driver's side did not appear to illuminate when the vehicle braked, in violation of Texas law. At 1:23 p.m. Officer Guerra activated his lights and pulled over the truck. The camera in Officer Guerra's patrol car activated with the lights and recorded the stop.

Officer Guerra approached the vehicle. Noel Castro identified himself as the driver and gave Officer Guerra his driver's license and insurance card. Back in the patrol car, at about 1:25 p.m., Officer Guerra conducted a license and registration check, and called Officer Ismael Guerra for assistance. The

---

[1] Deputy Longoria did not know that the informant had a criminal history, including a pending drug charge for "pick[ing] up contraband."

records check came back clear (although the timing of Office Guerra's receipt of the results is uncertain).

Approximately ten minutes after the initial stop, Officer I. Guerra arrived. The two officers approached the tractor, spoke with Castro, and obtained his consent to search the tractor. Based on the video record, Officer Guerra opened the door to the tractor at 1:34 p.m. The officers did not tell Castro that the records check had been completed before they requested his consent to search.

As Officer Guerra searched the tractor, Officer I. Guerra spoke with Castro and asked what he was hauling in the tanker. Castro responded that he was carrying waste water. Officer I. Guerra then tapped on the middle of the tanker with his flashlight and noted that it sounded hollow. He also observed that the pipe at the end of the tanker did not contain water, which typically occurs when a tanker transports water. Officer I. Guerra asked for, and received, consent to search the tanker. After opening one of the tanker's hatches, Officer I. Guerra observed clear plastic wrap commonly used to bundle marijuana. Officer I. Guerra then handcuffed Castro and escorted him to the patrol car. Both officers searched the tanker and found large bundles of marijuana.

Castro was charged with conspiracy to possess with intent to distribute 1,000 or more kilograms of marijuana in violation of 21 U.S.C. §§ 841, 846 (count one), and possession with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (count two). He moved to suppress the marijuana and his post-arrest statements, arguing that both were the fruit of an unconstitutional seizure of his person. After a hearing on the motion, the district court issued a lengthy oral denial. The district court found that the few minutes between the records check and Castro's consent to

search the truck was not an unreasonable length of time to detain Castro given that there was a valid traffic violation and reasonable suspicion of criminal activity. The district court further noted that the officers had heard about the criminal activity from Deputy Longoria, who received it from a source that Deputy Longoria knew and trusted. The district court also ruled that Castro's post-arrest statements were voluntary and admissible because of the validity of the stop. Castro then entered a conditional guilty plea to count two, reserving the right to challenge the denial of his motion to suppress. He was sentenced to 120 months in prison and a five-year term of supervised release. He timely appealed.

## II.

When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error and conclusions of law de novo. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed." *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks omitted). We must view the evidence in the light most favorable to the prevailing party—here, the government. *See Pack*, 612 F.3d at 347. In reviewing the district court's decision, we may affirm on any basis established by the record. *See United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006).

## III.

Castro maintains that the district court erred in denying his motion to suppress. He raises four arguments. First, he contends that the traffic stop violated his Fourth Amendment rights because he was detained after the purpose of the traffic stop had been accomplished—an investigation of the brake-light violation—without independent reasonable suspicion of criminal

activity. Second, he asserts that his subsequent consent to the search was not independent of the constitutional violation, and thus the marijuana should be excluded. Third, he avows that his post-arrest statements must be suppressed as fruit of the illegal search.[2] Fourth, he claims that the district court committed clear error in finding that Officer Guerra called for backup before the records check came back clear. Castro argues that the officer's testimony indicates that he called for backup after completion of the records check, thereby unconstitutionally prolonging the traffic stop.

In response, the government insists that the traffic violation was not the only justification for the stop—the officers had reasonable suspicion, based on the informant's tip, that Castro was transporting marijuana. The government also contends that the officers' actions were reasonably related to this additional basis for suspicion, and thus were constitutionally valid. We agree with the government.

## A.

Traffic stops constitute a "seizure" within the meaning of the Fourth Amendment. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine the legality of a traffic stop, we consider the two-prong standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* First, we examine whether the officer's decision to stop the vehicle was justified at its inception. *Id.* Second, we determine whether the officer's later actions were reasonably related to the facts that prompted the stop. *Id.* Here, Castro does not dispute

---

[2] On appeal, Castro does not challenge the voluntariness of his post-arrest statements or the validity of the *Miranda* warnings. Accordingly, he has abandoned those issues. *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992).

that the stop was justified at its inception. He contests only the reasonableness of the investigatory detention and the search that followed.[3]

In the context of a traffic stop, once an officer's "initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003). We assess reasonable suspicion based on the totality of the circumstances. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). Reasonable suspicion can develop through the collective knowledge of the officers involved so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). An informant's tip can form a basis for reasonable suspicion if it is marked by "indicia of reliability." *United States v. Martinez*, 486 F.3d 855, 863 (5th Cir. 2007). In determining whether a tip provides reasonable suspicion, we consider a number of factors, including: "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale." *Id.* at 861.

Here, the district court noted that the stop was "not just a traffic stop by itself" but was based on information regarding criminal activity that warranted further investigation. Thus, the purpose of the stop was not

---

[3] Castro also challenges the reasonableness of the investigatory detention based solely on the traffic infraction justification. He asserts that the police improperly prolonged the stop, detaining him after the completion of the records check. Because we find that the police had reasonable suspicion of drug crime, which provided an adequate basis for the scope and duration of the stop, we need not reach these arguments. *See United States v. Powell*, 732 F.3d 361, 371 n.5 (5th Cir. 2013).

No. 15-40719

achieved once the records check came back clean. Office Guerra initiated the traffic stop with two primary justifications: a traffic violation and reasonable suspicion of drug crime. Under the second *Terry* prong, Officer Guerra's actions were permissible because they were reasonably related to his suspicion of criminal activity. Approximately ten minutes passed between the traffic stop and Castro's consent to the search. At least two minutes and at most five minutes elapsed between the completion of the records check and the time the officers returned to speak with Castro. Officer Guerra's reasonable suspicion of a drug crime justified the time taken to process the initial traffic infraction, wait for the arrival of backup, and question Castro. *See Pack*, 612 F.3d at 362 (holding that "a delay of only eight minutes" was reasonable "[i]n view of the suspicious facts that [the officer] had observed"). The detention of Castro was temporary, and lasted no longer than necessary to effectuate the purpose of the stop. *See United States v. Pena-Gonzalez*, 618 F. App'x 195, 198 (5th Cir. 2015) (explaining that *Terry* permits elongation of a traffic stop if reasonable suspicion of additional criminal activity "existed in the first place"); *Powell*, 732 F.3d at 371 (concluding that reasonable suspicion of the drug crime "provided an independent basis for prolonging the investigatory detention beyond the parameters of a run-of-the-mill traffic stop").

Castro argues that the tip was not sufficiently reliable to provide independent reasonable suspicion of a drug crime. He maintains that the tip was categorically unreliable because Deputy Longoria was unaware of the informant's criminal history, had never received information from this man before, and did not question how the informant had obtained this information. In support, Castro points to Deputy Longoria's instruction to Officer Guerra to

7

"try to find whatever probable cause you can" as evidence that the tip was not sufficiently reliable or credible.[4]

An analysis of the relevant factors shows that the tip was supported by sufficient "indicia of reliability" to validate the officer's reasonable suspicion.[5] The factors identified by Castro—the informant's criminal history, his failure to relay how he obtained the information, and his status as a first-time informant—do weigh against a determination that the informant's tip was credible and reliable. *See Powell*, 732 F.3d at 370; *United States v. Steele*, 353 F. App'x 908, 910 (5th Cir. 2009). But we must account for the totality of the circumstances, and there are several additional circumstances to consider. Deputy Longoria had a basis for believing the tip. He testified that he recognized and trusted the informant; the two were from the same area and Deputy Longoria had known him "for a while." The information in the tip was specific and readily verified by Deputy Longoria. The man directed Deputy Longoria to the vehicle's location and identified the tractor-tanker. *See Alabama v. White*, 496 U.S. 325 (1990) (finding reasonable suspicion based on an anonymous tip that was specific, accurate, and verified by police before

---

[4] *But see Whren v. United States*, 517 U.S. 806, 813 (1996) (rejecting argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved).

[5] Castro cites *United States v. Martinez*, 486 F.3d 855 (5th Cir. 2007) as support for his challenge to the informant's credibility. But that case, which involved an anonymous tip, is distinguishable. In *Martinez*, an anonymous informant contacted the police to report that a man named "Angel" might have witnessed a quadruple homicide and might possess the weapons involved. *Id.* at 858. The officers had no "first-hand knowledge of the tip or the informant" or any basis for assessing the "information, the reliability of that source, or the specifics of what he or she said." *Id.* at 861–62. The only information verified by the police (the following day) was that Angel lived in the specified house. *Id.* at 862. Noting the absence of "any verified information that criminal activity may be afoot," this court concluded that the information received was insufficient to give rise to reasonable suspicion. *Id.* (internal quotation marks omitted). Here, by contrast, Deputy Longoria recognized the tipster, had known him as a resident of the community, and had interacted with him in the past. And the information provided by this informant was specific and timely.

effecting the traffic stop). Moreover, the tip was about ongoing activity and had not gone stale. After viewing the vehicle with the informant, Deputy Longoria called Officer Guerra and passed along the description of the tractor-tanker.[6] Officer Guerra spotted the vehicle approximately fifteen minutes later and initiated the stop. *See Ortiz*, 781 F.3d at 227.

In *Powell*, we considered a similar case. There, a confidential informant known to the police called the police department to report that a man and woman who had just left his house had purchased crack cocaine and were en route to Midland, Texas. *Powell*, 732 F.3d at 366–67. The tipster described the make, possible model, and color of the vehicle. He failed to mention, however, that he was responsible for cooking the crack cocaine that had just been purchased. *Id.* Based on the tip and a traffic violation, the police effected a stop of the vehicle. *Id.* at 367. We held that the officers had the requisite reasonable suspicion, finding that the informant's concealment of his status as the drug-dealer did not outweigh the specificity, predictive value, and recency of his tip.[7] *Id.* at 370–71.

The relationship between the informant and Deputy Longoria, the specificity of the tip, and the recency of the information outweigh the flaws in the informant's personal credibility and reliability. Because the officers had reasonable suspicion of criminal activity and acted diligently to dispel their suspicions, we affirm the district court.

---

[6] This communication between the officers is sufficient to trigger application of the collective knowledge doctrine. Deputy Longoria was in direct contact with Officer Guerra, and provided him with the underlying basis of the tip. *See Powell*, 732 F.3d at 369.

[7] The government argued in *Powell* that reasonable suspicion was based not only on the informant's tip but also on its subsequent corroboration and the appellants' conflicting statements. 732 F.3d at 369. In concluding that the officers had reasonable suspicion, however, we relied exclusively on the "specificity, predictive value, and recency" of the informant's tip. *Id.* at 371.

No. 15-40719

B.

"A search conducted pursuant to consent is excepted from the Fourth Amendment's warrant and probable cause requirements." *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). Consent cannot be the product of an illegal detention. *See United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006). It is valid if it is voluntary and an "independent act of free will." *United States v. Montgomery*, 777 F.3d 269, 273 (5th Cir. 2015). Valid consent may cure any taint of a prior Fourth Amendment violation. *Id.* at 272–73; *see Jenson*, 462 F.3d at 407 (noting that the purpose of the "independent act" inquiry is to determine whether there was a "break in the casual chain between the constitutional violation and the consent" (internal quotation marks omitted)).

Castro does not challenge the voluntariness of his consent. He argues that his consent was not an independent act of free will because it closely followed his illegal detention. Because we decide that Castro was not illegally detained, we need not reach the question of whether his consent was an "independent act of free will." *See United States v. Sierra*, 294 F. App'x 884, 889 n.3 (5th Cir. 2008) ("Because the investigative stop was constitutional, we need not determine whether [the defendant's] consent to search the vehicle was an 'independent act of free will.'"); *United States v. Khanalizadeh*, 493 F.3d 479, 484 (5th Cir. 2007) (same). We find Castro's consent valid and affirm the district court.

C.

"Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events." *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013). Castro argues that there was no temporal break between the illegal search and his post-arrest

10

statements, and thus that his statements must be suppressed. But the search was constitutional. Because there was no Fourth Amendment violation during either the stop or the search, Castro's inculpatory statements are not subject to suppression.

## D.

Castro also contests the district court's factual finding that Officer Guerra called for backup before the records check cleared. This fact is relevant only because Castro claims that the traffic stop was predicated solely on the basis of his traffic violation. Once the records check came back clean, Castro argues, Officer Guerra had no legitimate reason to then call for backup and extend the stop. *See Jenson*, 462 F.3d at 404. Because we hold that both the traffic violation and the tipster's information provided a basis for the stop, we need not consider Castro's factual challenge. Whether he called for backup before or after the check came back clear is irrelevant.

## IV.

We find Castro's detention reasonable in duration and his consent to the search valid. We hold that his post-arrest statements were not tainted by an unlawful detention and thus AFFIRM the district court's denial of his motion to suppress.