# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-11304

UNITED STATES OF AMERICA,

>    Plaintiff - Appellee

v.

STEVE CUELLAR ZUNIGA,

>    Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

The opinion issued June 5, 2017 is withdrawn by the panel, and the following is issued in its place:

In this appeal, Steve Cuellar Zuniga first challenges the district court's denial of his motion to suppress evidence obtained during a warrantless search of his person and the vehicle within which he rode as a passenger. Second, Zuniga objects to his career offender sentence under U.S.S.G § 4B1.2 on the ground that its identically-worded residual clause was held unconstitutional by the Supreme Court in *Johnson*. Third, Zuniga argues that his career offender sentence is additionally infirm because his prior conviction for delivery of a controlled substance cannot serve as a predicate offense for the

No. 14-11304

enhancement. For the reasons that follow, we AFFIRM the district court's denial of Zuniga's suppression motion, but we VACATE Zuniga's sentence, and REMAND for resentencing.

I.

In March 2014, the San Angelo Police Department ("SAPD") and the Texas Department of Public Safety ("DPS"), based on a tip from a cooperating defendant, combined efforts to interdict a traffic stop which confirmed—via the warrantless search of Steve Cuellar Zuniga's person and the vehicle within which he rode as a passenger—that Zuniga was a methamphetamine supplier.

After the cooperating defendant agreed to participate in a controlled buy, the two teams formulated a plan: the SAPD-led team would conduct surveillance on Zuniga's residence, while DPS officers surveilled the anticipated methamphetamine delivery area. While surveilling Zuniga's residence, Detective Eddie Chavarria observed a porch light come on and a man emerge from the house and approach the truck while shining a flashlight. Moments later, another person emerged, and Detective Chavarria observed the duo conduct what appeared to be a vehicle inspection: one individual inspected the vehicle while the other tested the emergency flashers, left and right turn signals, brake lights, and the high beams. Detective Chavarria immediately relayed this information to other officers.

Twenty minutes later, the vehicle left Zuniga's residence and Detective Chavarria decided to follow the vehicle. Approximately one block from the house, he witnessed the vehicle fail to signal for 100 feet continuously before turning left, in violation of Texas transportation law.[1] He immediately informed other officers they had grounds to stop the vehicle. When none of his

---

[1] Texas Transportation Code § 545.104 provides that a vehicle's "operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn."

2

fellow officers made the stop, Detective Chavarria continued to trail the vehicle. After driving approximately 18 blocks, Zuniga's vehicle pulled up to a convenience store and parked in a "disabled only" parking space.[2] Detective Chavarria radioed the truck's location and reported the potential parking violation.

Sergeant David Egger heard Detective Chavarria's report and drove past the area. Sergeant Egger then instructed Detective Mark Medley to walk in front of the truck to see whether a disabled parking placard hung from the rear-view mirror. Detective Medley reported back that he had observed *something* hanging from the rear-view mirror, though he could not be sure that it was the required parking placard.

Based on this information, Sergeant Egger asked Officer Cody Pruit, who had been notified at the start of his shift that his assistance might be needed later, to stop the vehicle shortly after it had left the parking lot. Officer Pruit—who later testified he only stopped the truck at Sergeant Egger's instruction, had not personally witnessed the alleged parking violation and was told that Zuniga would be driving the vehicle without a valid driver's license—effected the stop. Zuniga was not driving; instead, Angela Favila drove as Zuniga rode along as a passenger. After dispatch revealed that Favila did not have a valid driver's license and Zuniga had two outstanding city warrants, both were arrested. A subsequent search of Zuniga's person yielded a plastic bag of methamphetamine. While searching Zuniga's vehicle, officers discovered a backpack containing more methamphetamine, a nylon holster, a

---

[2] Pursuant to Texas Transportation Code § 681.006(a): "[A] vehicle may be parked for an unlimited period in a parking space or area that is designated specifically for persons with physical disabilities if: (1) the vehicle is being operated by or for the transportation of a person with a disability; and (2) there are: (A) displayed on the vehicle special license plates issued under Section 504.201; or (B) placed on the rearview mirror of the vehicle's front windshield a disabled parking placard."

semiautomatic pistol, Mexican Mafia-affiliated paperwork, and two cell phones.

Zuniga moved to suppress all evidence stemming from the traffic stop. The district court denied Zuniga's motion, reasoning that both traffic violations witnessed by Detective Chavarria were imputed to Officer Pruit under the collective knowledge doctrine, which provided him reasonable suspicion and justification for stopping the vehicle. Zuniga was subsequently charged by a federal grand jury with four counts. He entered a conditional guilty plea only to one count of Possession with Intent to Distribute 500 Grams or More of Methamphetamine and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii), and 18 U.S.C. § 2, preserving his right to challenge the suppression ruling.

At sentencing, the district court applied U.S.S.G. § 4B1.1's career offender enhancement for Zuniga's two prior felony convictions of (1) evading arrest and (2) delivery of a controlled substance, finding that they satisfied § 4B1.2's definitions of "crime of violence" and "controlled substance offense" respectively. Based on the applicable Guidelines range of 262 to 327 months' imprisonment, the district court imposed a sentence of 327 months' imprisonment with five years' supervised release. Zuniga timely appealed.

Following oral argument, we placed the case in abeyance to await the outcome of the en banc decision in *United States v. Gonzalez-Longoria*, No. 15-40041. Once the *Gonzalez-Longoria* decision was issued, we requested and received supplemental briefing from the parties advising on the effect, if any, of *Gonzales-Longoria* on the Court's disposition in this case. On August 24, 2016, Zuniga moved to file another supplemental brief, this time to address *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), a recent panel decision by this Court concerning the applicability of § 4B1.1 to the same Texas drug offense of which Zuniga had been convicted. We granted Zuniga's motion over

No. 14-11304

the Government's objection and received supplemental briefing from both parties on the issue.

## II.

We consider, first, Zuniga's challenge of the denial of his motion to suppress evidence found during the warrantless search following the vehicle stop. When assessing a denial of a motion to suppress evidence, we review "factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). The evidence is viewed in the light most favorable to the prevailing party, which in this case is the Government. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

Our inquiry is two-fold. First, we must determine whether there existed enough information to support a finding of reasonable suspicion to stop the vehicle within which Zuniga rode as a passenger. Second, if so, we must determine whether that knowledge can be imputed under the collective knowledge doctrine to Officer Pruit, who effected the stop and conducted the search.

## A.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.*; *see also United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995). The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a

No. 14-11304

'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). We have further instructed that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g.*, *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

Zuniga argues that the justifications supporting the stop should not be considered, first, due to "staleness" concerns regarding the turn-signal offense and, second, because the parking infraction was not confirmed until after the stop.[3] As for staleness, Zuniga suggests that we read Supreme Court precedent as mandating a "contemporaneity requirement" in this context. *See Whren v. United States*, 517 U.S. 806, 810 (1996). Although conceding that neither *Whren* itself nor any precedent of this Court has spoken directly to this issue, Zuniga contends that the Sixth Circuit's *United States v. Copeland*, 321 F.3d 582 (6th Cir. 2003), decision provides support for construing a temporal limitation to *Whren* stops.

In *Copeland*, speaking to the defendants' arguments that the stop of their vehicle for a completed parking violation was unreasonable, and thus the officers lacked probable cause, the Sixth Circuit explained:

> Although an officer may effect a stop of a vehicle for parking illegally, that stop is nonetheless subject to the general reasonableness requirements of *Whren*. In particular, where an officer is in possession of information that creates the basis for probable cause, he is required to act upon this information within a reasonable period of time—otherwise the existence of probable

---

[3] Zuniga also takes issue with the cooperating defendant's qualifications under the Supreme Court's *Florida v. J.L.*, 529 U.S. 266 (2000), decision. We need not consider the merits of this argument, as the information supplied by the cooperating defendant did not directly factor into the district court's denial of Zuniga's motion.

cause is said to have become stale. Whether the facts creating the basis for probable cause have become stale is directly related to the nature of those facts. "In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime[.]" "To determine whether evidence establishing probable cause is 'stale,' we consider the inherent nature of the suspected crime…." Logically, where an observed parking violation is not ongoing, an officer is required to effect a stop based upon this conduct within a reasonable period of time. Because a parking violation necessarily takes place only when a vehicle is stopped or standing, the time in which a moving vehicle can reasonably be stopped for a parking violation is relatively limited.

*Copeland*, 321 F.3d at 594–95 (citations omitted). Nevertheless, the *Copeland* court concluded that "given the circumstances surrounding the stop"— including the stop of the defendants one mile from their parked location—the stop of the vehicle was reasonable. *Id.* at 595.

We do not discount the reasoning expounded by our sister circuit in *Copeland*. Admittedly, on the record before us, Zuniga's staleness argument is not wholly devoid of support. The record indicates that the turn-signal offense occurred and was immediately relayed; yet, the call went unanswered by fellow officers. In fact, Zuniga was not stopped for this violation until approximately fifteen minutes after it was observed. But other factors provide support for the Government's argument that the stop was reasonable. Notably, Zuniga does not dispute that Detective Chavarria and other agents observed his vehicle fail to signal continuously for at least 100 feet before turning. Nor does Zuniga dispute that Detective Chavarria radioed information about the turn-signal violation to his colleagues as soon as he saw it occur, although none of the other officers were in position to stop the vehicle at the time. Thus, in following the *Copeland* court's lead in considering the "circumstances surrounding the stop," 321 F.3d at 595, we hold that the totality of the circumstances do not dictate a finding that the turn-signal violation was too stale to justify stopping the

vehicle. That is to say, the delay here is not enough to negate the violation as grounds for the later stop.

We make no attempt to articulate a *specific* time limitation to which officers must adhere in effecting a stop following a traffic violation. Rather, we stress that, consistent with our holdings in similar contexts, stops following transportation violations must be reasonable in light of the circumstances. *See, e.g.*, *United States v. Robinson*, 741 F.3d 588, 598 (5th Cir. 2014) (emphasizing that "[s]tale information cannot be used to establish probable cause"). To reiterate, we hold only that the elapsed time between an observed violation and any subsequent stop must be reasonable upon consideration of the totality of the circumstances.

Because we conclude that the totality of the circumstances surrounding the turn-signal violation provided the requisite reasonable suspicion to stop Zuniga's vehicle, we need not decide whether the second traffic violation provides an independent justification for the stop.

B.

Having determined there existed reasonable suspicion to stop Zuniga's vehicle, we now consider whether the collective knowledge doctrine provided the grounds for imputation of that information to Officer Pruit.

Reasonable suspicion to stop a vehicle, or probable cause to conduct a search, may arise through the collective knowledge of the officers involved in the operation. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013); *United States v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977). Under the collective knowledge doctrine, an officer initiating the stop or conducting the search need not have personal knowledge of the evidence that gave rise to the reasonable suspicion or probable cause, so long as he is acting at the request of those who have the necessary information. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999). In other words, the collective knowledge theory

No. 14-11304

applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007).

Here, Zuniga does not deny that officers could rely on the collective knowledge doctrine to transfer reasonable suspicion between each other. Instead, he falls back on his principal argument that the officers failed to establish any reasonable suspicion that could be transferred. As we discussed above, we do not agree. And although Officer Pruit's testimony shows that he only effected the stop at Sergeant Egger's instruction, his lack of personalized suspicion is "immaterial . . . because under the 'collective knowledge' doctrine, [Officer Pruit] did not need to form [his] own suspicion." *Ibarra-Sanchez*, 199 F.3d at 760 n.6. The suspicion transferred by the law enforcement agents who observed Zuniga's traffic violation suffices. Accordingly, the district court's denial of Zuniga's motion to suppress was not in error.[4]

### III.

We now turn to Zuniga's challenge of his 327-month sentence. Zuniga raises two arguments. We address each in turn.

### A.

First, Zuniga argues that remand of his career offender sentence is required under the reasoning of *United States v. Johnson*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court struck down the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague. 135 S. Ct. at 2257. Zuniga argues that the identically

---

[4] We note that even if we were to find a Fourth Amendment violation, Zuniga's claim encounters yet another obstacle in that Officer Pruit's discovery of two outstanding warrants for Zuniga may constitute a sufficient intervening event to break the causal chain between the putatively unlawful stop and the subsequent discovery of drug-related evidence. *See Utah v. Strieff*, 136 S. Ct. 2056, 2062 (2016).

No. 14-11304

worded residual clause in § 4B1.2(a)(2)'s definition of "crime of violence" suffers from the same constitutional defect[5] and therefore his prior conviction for evading arrest does not qualify as a "crime of violence" for career offender purposes. The Government, in fact, agrees with Zuniga that remand is appropriate under *Johnson*. Since briefing and oral argument, the Supreme Court granted certiorari in *Beckles v. United States*, 137 S. Ct. 886 (2017), to address a similar due process challenge to § 4B1.2(a)(2)'s residual clause. In March, the Supreme Court issued a decision, holding that the Sentencing Guidelines "are not subject to vagueness challenges under the Due Process Clause." *Id.* at 890. In a recent letter to the Court, Zuniga concedes that *Beckles* appears to foreclose his argument. We agree and therefore must reject the view which is shared by Zuniga and the Government.

## B.

Next, Zuniga challenges his career offender sentence on the basis that his prior Texas conviction for delivery of a controlled substance cannot serve as a predicate offense for purposes of § 4B1.1's enhancement. Zuniga argues that vacation of his sentence is compelled by *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Mathis v. United States*, 136 S. Ct. 2243 (2016), which were decided during the pendency of this appeal.

In *Hinkle*, the defendant had a prior conviction under this same Texas statute and mounted the same challenge to his career offender sentence that Zuniga does here. And in *Hinkle*, this Court squarely held: "That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1." 832 F.3d at 576–77. This is because

---

[5] Effective August 1, 2016, the Sentencing Commission amended § 4B1.2(a)(2) to delete the residual clause, noting that it implicated many of the same concerns cited by the Supreme Court in *Johnson*.

"[t]he 'delivery' element of [Zuniga's] crime of conviction[6] criminalizes a 'greater swath of conduct than the elements of the relevant [Guidelines] offense." *Id.* at 576 (quoting *Mathis*, 136 S. Ct. at 2251) (some alterations in original). We further explained that although the law of this Circuit previously permitted sentencing courts to refer to record documents to ascertain the actual method of delivery on which a defendant's conviction was based for purposes of determining whether the conviction constituted a controlled substance offense under the Guidelines—the so-called "modified categorical approach"—"*Mathis* makes clear that sentencing courts may no longer do so." *Id.* at 574–75. Accordingly, Zuniga's conviction is categorically "not a controlled substance offense under [§ 4B1.2(b) of] the Guidelines." *Id.* at 576 (quoting *Mathis*, 136 S. Ct. at 2251).[7]

The Government concedes that *Hinkle* and *Mathis* are dispositive, requiring us to vacate Zuniga's career offender sentence even under a plain error standard.[8] The Government contends, however, that we should decline to reach the merits of this argument because Zuniga forfeited it by failing to

---

[6] *See* Tex. Health & Safety Code Ann. §§ 481.112(a) and 481.002(8).

[7] Zuniga acknowledges that the district court did not consider state court documents associated with his prior conviction; however, the Government had located the documents and intended to offer them to supplement the record on appeal, which we may consider in deciding whether Zuniga's enhancement was supported. *See States v. Vargas-Soto*, 700 F.3d 180, 183 (5th Cir. 2012). In Zuniga's case, the relevant state court documents would have demonstrated that his prior conviction in fact fell within the definition of a controlled substance offense in § 4B1.2(b), effectively foreclosing this line of argument under our prior precedent.

[8] As a threshold matter, the Government notes that we need not address this issue if we agree with the parties that § 4B1.2(a)(2) is unconstitutional under *Johnson*. As discussed above in Part III.A, *Beckles* dictates a different result on that issue. It is therefore appropriate that we consider whether Zuniga's sentencing claim may nonetheless prevail on this alternative ground.

raise it in the district court and in his opening brief to this Court.[9] According to the Government, *Mathis* did not change the law; it merely "reaffirmed" the principle, articulated in *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013), that the modified categorical approach may only be used to narrow an overly broad statute that is divisible, *i.e.*, a statute that sets out alternative elements of an offense (rather than alternative means of committing the offense).

Conversely, Zuniga maintains that his claim satisfies our exception to forfeiture because *Mathis* and *Hinkle* are "intervening court decision[s]" that "provided an important clarification in the law," and our refusal to consider this issue would result in "perpetuating incorrect law." *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 661 & n.28 (5th Cir. 2008). Indeed, Zuniga asserts that attempting to raise this claim earlier would not have been successful, as demonstrated by recent unpublished decisions in this Circuit that were issued before *Hinkle*, rejecting this very claim. *See, e.g.*, *United States v. Collier*, 603 F. App'x 339 (5th Cir. May 18, 2015); *United States v. Conley*, 644 F. App'x 294 (5th Cir. Mar. 23, 2016), *cert. granted*, *judgment vacated*, 137 S. Ct. 153 (2016).

In those cases, we rejected the contention that it was plain error for a district court to consider state court documents to determine whether the defendants' convictions under the same Texas statute constituted a controlled

---

[9] Although the Government refers to this issue as a matter of "waiver" and we have sometimes used the terms "forfeiture" and "waiver" interchangeably, the issue here is appropriately characterized as one of forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotations and citations omitted). Failure to raise a claim to the district court "constitutes a forfeiture, not a waiver, of that right for the purposes of appeal." *United States v. Chavez-Valencia*, 116 F.3d 127, 130 (5th Cir. 1997). Similarly, "any issue not raised in an appellant's opening brief is forfeited." *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016).

substance offense for sentencing enhancement purposes. Although we acknowledged the defendants' reliance on *Descamps*, we nonetheless concluded that this argument, "if not foreclosed, [is] unsettled and at least subject to reasonable dispute," and "[a] claim subject to reasonable dispute cannot succeed on plain error review. " *Conley*, 644 F. App'x at 295 (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Pertinently, the Supreme Court granted certiorari in *Conley*, vacated the judgment, and remanded the case to our Court "*for further consideration in light of Mathis v. United States*[,136 S. Ct. 2243 (2016)]." *Conley v. United States*, 137 S. Ct. 153 (2016) (emphasis added).

Examining *Descamps* alongside *Mathis* further supports Zuniga's position that *Mathis* clarified the law on divisibility in important respects. In *Descamps*, the Court specifically addressed the question of "whether sentencing courts may . . . consult additional documents when a defendant was convicted under an 'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense." 133 S. Ct. at 2281. The Court answered the question in the negative. *Id.* at 2282. It reiterated that sentencing courts may use the modified categorical approach when the statute under which the defendant was convicted is divisible, that is, it sets out alternative elements of the offense, effectively creating multiple, alternative versions of the crime. *Id.* at 2281, 2284.

*Mathis*, on the other hand, concerned "a different kind of alternatively phrased law:  not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." 136 S. Ct. at 2249. A split among the circuits existed as to whether the modified categorical approach can be used in that circumstance to compare the defendant's crime of conviction with the elements of the generic offense.  *Id.* at

2251. *Mathis* settled the issue, holding that alternative means do not alternative elements make, precluding consideration of any record materials in sentencing decisions. *Id. Hinkle* then applied *Mathis* to the same Texas statute under which Zuniga was convicted, resolving any uncertainty in this Circuit on this issue.

We are sufficiently persuaded by Zuniga's arguments against forfeiture. Accordingly, we address the merits of Zuniga's claim to determine whether the district court committed plain error.

Zuniga's claim easily satisfies the plain error standard. To obtain relief, Zuniga must show (1) an error that (2) is obvious and (3) affected his substantial rights. *United States v. Olano*, 507 U.S. 725 (1993). "Once these three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal citations omitted).

Our preceding discussion makes clear that Zuniga has shown an obvious error. Zuniga further demonstrates that the error affected his substantial rights. Zuniga's career offender guideline range was 262 to 327 months' imprisonment, based on an offense level of 34 and a criminal-history category of VI. Without relying on the prior drug-related conviction, Zuniga would at most have one qualifying conviction under § 4B1.2, but a defendant needs at least two qualifying convictions to be deemed a career offender. *See* § 4B1.1(a). Zuniga's non-career offender range would have been 168 to 210 months' imprisonment, based on an offense level of 33 and a criminal history category of III. *See* U.S.S.G., ch. 5, pt. A (Sentencing Table).[10] "In most cases a defendant

---

[10] Zuniga argues that the gap between the sentencing ranges should be even larger because he is eligible for a lower base offense level based on an intervening amendment to

who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome," in which case, he has shown the error affects his substantial rights. *Molina-Martinez*, 136 S. Ct. at 1343, 1346.

As to the fourth prong of plain error review, we consider whether, based on "the particular facts of [the] case," the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hernandez*, 690 F.3d 613, 622 (5th Cir. 2012). Importantly, "we do not view the fourth prong as automatic if the other three prongs are met." *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc). We have recognized, however, that a "substantial disparity between the imposed sentence and the applicable Guidelines range" may warrant the exercise of our discretion to correct the error, if the particular facts of the case so advise. *See, e.g.*, *Hernandez*, 690 F.3d at 622.

Here, the government has conceded that the error was plain. Given this concession and the totality of the circumstances, including the difference in treatment that would occur if we allow the error to persist and the significant disparity between the imposed sentence and the applicable Guidelines' range, we conclude that leaving Zuniga's erroneous sentence in place would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Id.* Accordingly, Zuniga has demonstrated his entitlement to remand for resentencing.

**AFFIRMED in part, VACATED in part, and REMANDED for resentencing.**

---

the drug-quantity guidelines. Because Zuniga did not specifically raise this issue as a point of error for our determination, we decline to address it.