**Opinion issued December 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00747-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**KHALIL JAMEHL VINSON, Appellee**

---

**On Appeal from County Criminal Court at Law No. 15**
**Harris County, Texas**
**Trial Court Case No. 2387805**

---

## O P I N I O N

Following a traffic stop, appellee Khalil Jamehl Vinson was charged with driving while intoxicated. *See* TEX. PENAL CODE § 49.04. Vinson filed a motion to suppress evidence obtained during the traffic stop. The trial court granted the motion,

and the State appealed. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(5), (e) (permitting appeal from order granting motion to suppress). We reverse.

## Background

On December 18, 2021, around 12:40 a.m., Officer Benjamin Tanner was traveling eastbound on Washington Avenue in Houston when he stopped at a redlight to turn left onto Shepherd Drive. At that point, Tanner observed a black Infiniti sedan make a right turn onto Shepherd in front of him. Tanner saw that the vehicle's headlights and taillights were not illuminated. Tanner testified that it was a traffic violation to "drive at night without headlights and taillights." *See* TEX. TRANSP. CODE § 547.302(a)(1) (stating that "[a] vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle . . . at nighttime"); *see also Francis v. State*, 425 S.W.3d 554, 556 (Tex. App.—Fort Worth 2014, no pet.) ("Driving without headlights at night is a traffic offense.").

When Tanner's light turned green, he turned left and proceeded to follow the Infiniti. As Tanner approached a subsequent red light at Center and Shepherd, he activated his police lights, went through the red light, and caught up with the Infiniti at the intersection of Shepherd and Interstate 10. Tanner estimated he followed the car for approximately fifteen to twenty seconds before the driver turned on his lights. Tanner testified that at the red light on Shepherd and Interstate 10, the Infiniti's lights

were still off.[1] When the light turned green and the car began moving, the driver turned on his lights and eventually pulled over after driving the wrong direction on a one-way street. Due to evidence obtained during the subsequent traffic stop, Tanner arrested the driver (identified as Vinson) for driving while intoxicated. *See* TEX. PENAL CODE § 49.04.

Vinson moved to suppress any evidence obtained during the traffic stop, arguing the evidence was obtained in violation of the United States Constitution, Texas Constitution, and Texas Code of Criminal Procedure. At a hearing on September 22, 2022, Vinson argued that Tanner's stop was "unreasonable under the Fourth Amendment" because "everyone [at the hearing] has said that the lights were on at [the time of the stop]." The trial court orally granted the motion at the conclusion of the hearing and signed an order granting the motion on September 23, 2022. On September 30, 2022, the State requested findings of fact and conclusions of law. The trial court did not enter any findings of fact or conclusions of law before the State filed its notice of appeal on October 7, 2022. Thereafter, the parties learned the trial court intended to issue findings of fact and conclusions of law and requested that this Court abate the appeal. We granted the State's motion. Following entry of

---

[1] Tanner also testified that because Vinson was braking at the redlight, "there [was] a possibility" Vinson's lights were on at that point. It is undisputed that by the time the vehicles began moving when the light at I-10 and Shepherd turned green, Vinson had turned on his lights.

the findings of fact and conclusions of law on January 3, 2023, we reinstated the appeal.

## Motion to Suppress

In a single issue, the State argues that the trial court abused its discretion in suppressing evidence obtained during the traffic stop because Officer Tanner had a reasonable suspicion that Vinson operated his vehicle at night without the required lights, in violation of Texas Transportation Code section 547.302.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). We likewise employ this bifurcated standard when reviewing the trial court's findings of fact and conclusions of law. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). Under the bifurcated standard, the trial court is given almost complete deference in its determination of historical facts, especially if based on an assessment of demeanor and credibility, and the same deference is afforded to the trial court as to its rulings on the application of the law to questions of fact, and to mixed questions of law and fact, if resolution of these questions depends on an evaluation of demeanor and credibility. *Martinez*, 570 S.W.3d at 281. However, our review of questions of law is de novo. *Id.* Likewise, we review de novo mixed questions of law and fact that do

4

not turn on credibility and demeanor. *Saenz*, 411 S.W.3d at 494; *see also State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (holding that "[w]hen the posture of a case . . . presents only questions of the validity of the trial court's legal rulings . . . an appellate court's review is de novo") (internal quotations omitted).

**B.      Findings of Fact**

Here, the trial court entered findings of fact and conclusions of law relating to its decision to grant the motion to suppress. The trial court found that "Officer Tanner testified that he observed Defendant operating his vehicle without the headlights and taillights being on as he turned on Shepherd Drive, and that at 12:40 a.m., an operated vehicle's headlights are required to be on." Further, the trial court concluded that "Officer Tanner's testimony is credible." As this is an evaluation of credibility and demeanor, we give deference to these findings. *See Ortiz*, 382 S.W.3d at 372.

The trial court also cited the following legal principles in its conclusions of law:

> 1.      An officer may make a traffic stop if the reasonable-suspicion standard is satisfied. An officer has reasonable suspicion if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer reasonably to conclude that the person who has been detained is, has been, or soon will be engaged in criminal activity. *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018).
>
> . . . .

5

5.     Whether an officer has reasonable suspicion is determined from the facts and circumstances actually known to the officer at the time of the detention—what he saw, heard, tasted, touched, or felt—not what the officer could have or should have known. *State v. Duran*[,] 396 S.W.3d [563,] 572 [(Tex. Crim. App. 2013)].

The trial court also made conclusions of law regarding its application of the law to the facts, which did not concern evaluations of credibility or demeanor. We review these determinations de novo. *See Ortiz*, 382 S.W.3d at 372. For example, though the trial court found Officer Tanner to be credible, the trial court ultimately concluded that "the traffic stop was unreasonable."

**C.     Analysis**

The United States Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Further, law enforcement officials have probable cause to initiate a traffic stop when they see a person commit a traffic violation. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); *see State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd). "Because reasonable suspicion is a lesser standard than probable cause, when an officer has probable cause to detain a suspect, the officer has also satisfied the reasonable suspicion standard for detention." *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.). Here, once Tanner saw Vinson operating his vehicle without headlights or taillights in violation of Texas

6

Transportation Code section 547.302, he had both probable cause and a reasonable suspicion to detain Vinson. *See Gray*, 158 S.W.3d at 469–70 (holding "undisputed fact" that officer observed driver commit offense of turning without signaling gave officer probable cause for arrest); *Rubeck*, 61 S.W.3d at 745. Tanner's observation is depicted in the dash cam video admitted into evidence at the suppression hearing. Further, in its findings of fact and conclusions of law, the trial court determined that (1) Tanner testified that he saw Vinson driving without his headlights or taillights on, at a time when those lights are required to be on; and (2) it found Officer Tanner's testimony to be credible.

In response to the State's arguments, Vinson focuses on the undisputed fact that at some point after Tanner observed the initial violation, but before he stopped Vinson, Vinson turned on his lights. Officer Tanner testified that "[p]rior to completely stopping the vehicle or prior to the traffic stop being done, yes, [Vinson] had . . . self[-]corrected and turned his lights back on." Further, in its findings of fact, the trial court stated that Tanner "did not immediately pursue defendant or conduct a traffic stop. . . . Officer Tanner testified that it wasn't until he was behind him that he would consider it was his attempt to initiate a traffic stop. At the point where the

traffic stop was conducted, Officer Tanner testified that Defendant's lights were on."[2]

Vinson claims that because he "corrected" his traffic violation, this somehow negates Officer Tanner's ability to lawfully detain him. Vinson does not cite any legal authority to support his position.

We reject Vinson's argument, which would render many typical traffic stops unlawful. For example, as the State points out, it is often the case that a law enforcement official initiates a traffic stop after observing someone speeding, but by the time the officer stops the driver, he or she is no longer speeding. This does not render the subsequent stop, based on the officer's initial observation of speeding, unlawful. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) ("As

---

[2]     At the hearing, the trial court seemed to focus on this testimony. After both sides finished questioning Officer Tanner, the following exchange occurred:

> THE COURT: At what point did you turn your lights on to indicate you were about to conduct a traffic stop? There's a part of this that is unclear to the Court. I see where he is turning or made the right turn on Shepherd, and then we span to this part of the video. At what point did you initiate the traffic stop and turn your lights on?

> [OFFICER TANNER]: So I turned my lights on as I was going through Shepherd and Center because there was a red light. And I saw that the light was about to change but because of the distance between us, I decided that it was imperative I get up to him before he got up to the freeway. And I hit my lights there and it wasn't until -- my lights were on at that point, but it wasn't until I was behind him that I would consider that's when I was attempting to stop him. The rest of the time was me attempting to catch up to the vehicle.

8

long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation . . . .*”). Further as the Court of Criminal Appeals held in *Cortez*, cited by the trial court in its conclusions of law, reasonable suspicion for a traffic stop exists “if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person *has engaged* or is (or soon will be) engaged in criminal activity.” 543 S.W.3d at 204 (emphasis added). Vinson’s argument, and the trial court’s grant of the suppression motion, negates the “has engaged” language.

To the extent that Vinson argues that the ultimate traffic stop occurred too long after Tanner first observed the violation, we disagree. A review of the dash cam footage shows that less than three minutes elapsed from the time Tanner saw Vinson’s car turn in front of him without lights on, to the time Vinson’s vehicle came to a stop. We decline to hold that this is, per se, an unreasonable length of time. *See, e.g.*, *State v. Dodhiya*, Nos. 01-18-00967-CR, 01-18-01095-CR, 2020 WL 2786680, at *6–7 (Tex. App.—Houston [1st Dist.] May 28, 2020, pet. ref’d) (mem. op., not designated for publication) (rejecting argument, raised for first time on appeal, that State could not establish reasonable suspicion standard because of claimed “excessive delay”; court noted that officer followed suspect for one and one-half miles and “neither party adduced evidence about what is a typical amount of time to

follow a driver after observation of a traffic violation or what factors influenced the relevant actions").[3]

We sustain the State's sole issue.

## Conclusion

We reverse the trial court's grant of the motion to suppress and remand this case for further proceedings consistent with this opinion.


Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Publish. TEX. R. APP. P. 47.2(b).

---

[3] Federal case law also supports a determination that the time and distance at issue here was not unreasonable. *See United States v. Smith*, No. CR408-208, 2008 WL 5332117, at \*1 (S.D. Ga. Nov. 10, 2008), *report and recommendation adopted with unrelated modification*, 2008 WL 5332085 (S.D. Ga. Dec. 19, 2008) (holding traffic stop not unlawful in context of officer observing vehicle with broken right taillight turning into complex and parking, then observing three individuals get out of vehicle and chat with another person for five minutes, and then observing all four people get back into vehicle and drive away and at that point, initiating traffic stop); *United States v. Copeland*, 321 F.3d 582, 594–95 (6th Cir. 2003) (holding detention reasonable where officer observed parking violation and then followed driver for mile before initiating stop); *United States v. Cline*, 349 F.3d 1276, 1285 (10th Cir. 2003) (holding traffic stop lawful despite fact that officers had other motives for stopping defendant and did not stop him for more than mile after traffic violation); *United States v. Scopo*, 19 F.3d 777, 780–82 (2d Cir. 1994) (concluding police officer's action in waiting 2.2 miles to initiate traffic stop did not make stop unlawful); *cf. United States v. Zuniga*, 860 F.3d 276, 282 (5th Cir. 2017) (rejecting argument that traffic offense became "stale" after 15 minute delay between time of offense and traffic stop, considering events in interim).