NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13816

COMMONWEALTH  vs.  JOSE ARIAS.


Suffolk.     December 3, 2025. - April 15, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Constitutional Law, Search and seizure.  Search and Seizure,
Motor vehicle.  Motor Vehicle, Citation for violation of
motor vehicle law.  Controlled Substances.  Practice,
Criminal, Motion to suppress.


Indictment found and returned in the Superior Court
Department on August 15, 2019.

A pretrial motion to suppress evidence was heard by Peter
B. Krupp, J., and the case was tried before James H. Budreau, J.

The Supreme Judicial Court granted an application for
direct appellate review.


John P. Warren for the defendant.
Brooke Hartley, Assistant District Attorney (Thomas
Laverty, Assistant District Attorney, also present) for the
Commonwealth.
The following submitted briefs for amici curiae:
Rebecca Kiley, Committee for Public Counsel Services,
Claudia Leis Bolgen, Katharine Naples-Mitchell, & Radha
Natarajan, for Committee for Public Counsel Services & others.
Mason A. Kortz for Mailyn Fidler & another.
Steven E. Obus, Alisha Gupta, & Emily E. Wakeman, of New
York, Christina H. Kroll, of California, Alexander B. Guzy-

Sprague, of the District of Columbia, Jessie J. Rossman, Suzanne Schlossberg, Jennifer M. Herrmann, Matthew R. Segal, & John E. Roberts for American Civil Liberties Union of Massachusetts & another.

DEWAR, J.  While surveilling the defendant as part of a drug investigation, a Boston police officer in an unmarked vehicle witnessed the defendant commit a civil traffic infraction.  Twenty-four hours later, the officer, who again was surveilling the defendant from an unmarked vehicle, requested that other officers stop the defendant's vehicle.  During the ensuing stop, police discovered cocaine on the defendant's person and in his vehicle.  The defendant moved to suppress the evidence obtained during the stop, a judge denied the motion in large part, and the defendant was convicted of one count of trafficking cocaine.

On appeal, the defendant contends, among other claims of error, that his motion to suppress all evidence obtained from the traffic stop should have been allowed.  He argues in part that the police unreasonably delayed conducting the motor vehicle stop after observing the infraction, and that the seizure therefore violated the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

We conclude that the motor vehicle stop violated art. 14. Although a police officer may stop a motor vehicle upon

observing a civil traffic infraction, such a stop is a seizure that must be conducted in a reasonable manner. A stop for an infraction is not reasonable if, upon consideration of the totality of the circumstances, the stop occurred after an unreasonable delay. In the particular circumstances here, as detailed below, the Commonwealth did not carry its burden to show that the twenty-four hour delay in stopping the defendant was reasonable. We therefore reverse so much of the judge's order as denied the defendant's motion to suppress, vacate and set aside his conviction, and remand the matter to the Superior Court.[1]

Background. 1. Facts. We summarize the facts found by the motion judge.

On March 27, 2019, members of a Boston police drug control unit, including Sergeant Detective William J. Feeney and Officer Mathew Pieroway, were patrolling the Brighton section of Boston in plain clothes and unmarked vehicles. Around 3:10 P.M.,

---

[1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services, the Criminal Justice Institute at Harvard Law School, the Massachusetts Association of Criminal Defense Lawyers, and the New England Innocence Project; Mailyn Fidler and the Electronic Privacy Information Center; and the American Civil Liberties Union of Massachusetts and the American Civil Liberties Union.

Feeney observed a man, later identified as the defendant,[2] enter a gray sport utility vehicle (SUV) parked on Foster Street and drive away. Feeney attempted to follow the SUV but was thwarted by traffic.

Based on radio communications from Feeney, Pieroway located the SUV and began surveilling it. Pieroway then trailed the SUV for approximately six miles, into the Jamaica Plain section of Boston.

There, Pieroway observed the defendant commit a civil traffic infraction. The defendant's SUV was stopped behind a line of approximately seven vehicles that had built up on Centre Street behind a stop sign at the intersection with South Street. Pieroway observed the defendant as he pulled the SUV quickly to the right side of the line of stopped vehicles, passed the stopped vehicles, failed to stop at the stop sign, and took a left-hand turn in front of the line of stopped vehicles.[3]

---

[2] Based on the defendant's physical appearance, it was apparent that the defendant was not the registered owner of the vehicle.

[3] Although the Commonwealth does not specify the law or regulation violated by the defendant's conduct, and the record does not reflect that he received a citation, there is no dispute that this conduct amounts to a civil infraction for which a driver may be cited. See generally G. L. c. 90C, § 3 (A) (1) ("If a police officer observes or has brought to the officer's attention the occurrence of a civil motor vehicle infraction, the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction in accordance with this subsection").

Pieroway neither attempted to stop the defendant nor called for assistance from a marked cruiser to make the stop. Having determined that it was unsafe for him to attempt to follow the SUV, Pieroway ceased his surveillance.

The following day, at around 3:15 P.M., Feeney observed the defendant leave a residence on Foster Street in Brighton and enter the same SUV. Feeney began to follow the SUV, but fell behind due to traffic.

Pieroway located the SUV after hearing Feeney's radio communications. As on the previous day, Pieroway was in an unmarked vehicle. At 3:27 P.M., Pieroway requested that a marked cruiser stop the SUV, stating on the police radio, "[W]e're looking to stop a vehicle for [a] drug investigation."[4]

Other officers heard Pieroway's request, stopped the SUV, asked the defendant to get out of the vehicle, and pat frisked him. The patfrisk yielded a hard object in the defendant's pocket, which the defendant acknowledged was cocaine. The

---

[4] Both in the trial court and before this court, the Commonwealth has not sought to rely on evidence relating to the drug investigation to justify the traffic stop. Regarding the investigation's nature, the motion judge found, based on the limited record before him, only that "[t]he police apparently had information about the SUV and/or defendant before . . . Feeney's observations of the SUV on March 27, 2019."

defendant was arrested, and he then directed the officers to additional cocaine in the SUV.

2. Procedural history. The defendant was charged with one count of trafficking 200 or more grams of cocaine. He filed a motion to suppress the evidence obtained as a result of the traffic stop under the Fourth Amendment and art. 14, among other grounds. Following an evidentiary hearing, the motion judge denied the motion to suppress the physical evidence.[5] As relevant here, the judge concluded that the police lawfully stopped the defendant's vehicle based on the traffic infraction observed the day before. In so concluding, the judge noted the lack of reported cases in Massachusetts addressing whether "a motor vehicle stop may . . . be based on a traffic violation witnessed the previous day."[6]

The defendant's first trial ended in a mistrial when the jury were unable to reach a verdict. The Commonwealth successfully moved to reduce the indictment to one count of trafficking one hundred to 200 grams of cocaine. At his second

---

[5] The defendant's motion also sought suppression of statements he made during the stop, and the judge allowed the motion with respect to certain statements.

[6] At the judge's invitation, the parties had filed supplemental letter briefs on this question. The motion to suppress was decided prior to this court's decision in Commonwealth v. Daveiga, 489 Mass. 342 (2022), discussed infra.

trial, the defendant was convicted of the lesser included offense of trafficking eighteen to thirty-six grams of cocaine.

The defendant timely appealed, and we granted his application for direct appellate review.

Discussion.  The defendant argues that the motor vehicle stop that yielded the Commonwealth's evidence in this case was unreasonable, in violation of the Fourth Amendment and art. 14, because of the twenty-four hour delay that intervened between the officer's observation of the civil traffic infraction and the subsequent stop of the defendant's vehicle.[7]  The delay was unreasonable, the defendant contends, based on the lack of justification for the delay, its length, and the pretextual nature of the eventual stop.  The Commonwealth argues that the delay prior to the stop was reasonable because the officer was unable to stop the defendant safely at the time of the infraction and did not maintain surveillance of the defendant after the infraction occurred.

---

[7] The defendant also argues that all pretextual traffic stops violate art. 14; that the exit order and patfrisk of the defendant were not justified in the circumstances of the stop; and that the trial judge erred in denying the defendant's posttrial motion to interview one of the jurors regarding a letter sent by the juror to the judge and defense counsel. Deciding this case as we do, we need not address these arguments.

When reviewing a ruling on a motion to suppress, "we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's application of constitutional principles to the facts as found" (citation omitted).  Commonwealth v. Buckley, 478 Mass. 861, 864 (2018).

Both the Fourth Amendment and art. 14 guarantee the right to be free from unreasonable searches and seizures.  Buckley, 478 Mass. at 865.  Because art. 14 affords at least as much protection for individuals as the Fourth Amendment, see Commonwealth v. Delgado-Rivera, 487 Mass. 551, 555 (2021), cert. denied, 142 S. Ct. 908 (2022), we review the defendant's claim under the standards of art. 14, "with the understanding that, if these standards are met, so too are those of the Fourth Amendment" (citation omitted), Garcia v. Commonwealth, 486 Mass. 341, 349 (2020).

A police stop of a moving vehicle is a seizure and therefore must be reasonable to be valid under art. 14. Buckley, 478 Mass. at 865, citing Commonwealth v. Rodriguez, 472 Mass. 767, 773 (2015).  "In general, when an officer observes a traffic violation, the officer may stop the vehicle to address that violation." Commonwealth v. Daveiga, 489 Mass. 342, 350 (2022).  "[A]lthough a vehicle stop does represent a significant intrusion into an individual's privacy, the governmental

interest in allowing such stops for the purpose of promoting compliance with our automobile laws is clear and compelling"; permitting such stops "gives police the ability to immediately address potential safety hazards on the road." Rodriguez, supra at 776-777. Indeed, "[t]he foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations," Whren v. United States, 517 U.S. 806, 817 (1996), quoting Delaware v. Prouse, 440 U.S. 648, 659 (1979), "which afford the 'quantum of individualized suspicion' necessary to ensure that police discretion is sufficiently constrained," Whren, supra at 817-818, quoting Prouse, supra at 654-655.

An observed traffic violation justifies a traffic stop "regardless of the underlying intent or motivations of the officers involved." Buckley, 478 Mass. at 865, citing Commonwealth v. Santana, 420 Mass. 205, 209 (1995). Under this authorization rule, an officer may stop a vehicle upon observing a traffic violation even if the officer's subjective aim is to investigate a different offense. See Buckley, supra at 865-866. The rule avoids "the illogical result of allowing stops of nonsuspect drivers who violate motor vehicle laws, but forbidding stops of suspected criminals who violate motor vehicle laws." Id. at 868, quoting Santana, supra at 210 n.3. And it "serves [the] significant government interest of ensuring

public safety on our roadways" (quotation omitted).  Daveiga,
489 Mass. at 350, quoting Buckley, supra at 869.

"At the same time, the observation of a traffic violation
does not equip an officer with bottomless authority to seize a
defendant."  Daveiga, 489 Mass. at 350.  A traffic stop, "even
if only for a brief period and for a limited purpose," intrudes
on the privacy interests of the driver and any passengers in the
vehicle.  Commonwealth v. Rodriguez, 430 Mass. 577, 579 (2000),
quoting Whren, 517 U.S. at 809.  See Rodriguez, 472 Mass. at 776
("Regardless of the reason for it, a police stop of a moving
vehicle can be humiliating, frightening, and embarrassing for
the vehicle's occupants . . ." [quotation and citation
omitted]).  Accordingly, a traffic stop "may last no longer than
is necessary to effectuate" the stop's purpose of "addressing
the infraction."  Daveiga, supra, quoting Rodriguez v. United
States, 575 U.S. 348, 354 (2015).  And "[p]olice authority to
seize an individual ends 'when tasks tied to the traffic
infraction are -- or reasonably should have been -- completed.'"
Commonwealth v. Cordero, 477 Mass. 237, 242 (2017), quoting
Rodriguez, 575 U.S. at 354.

We most recently discussed the limits on police authority
to conduct a traffic stop upon observing a civil traffic
infraction in Daveiga, 489 Mass. at 350-355.  There, police
encountered a vehicle double-parked and blocking a narrow one-

way street. Id. at 343. After the officers pulled alongside the vehicle and instructed the driver to move, the driver drove away instead of relocating the vehicle to any of the nearby open parking spaces. Id. at 343-344. The officers grew suspicious and "changed [their] mind[s] about pulling over the [vehicle]." Id. at 344. The officers then conducted a traffic stop, during which they discovered an unlicensed firearm. Id. at 344-345. We held that the stop violated art. 14 because, once the officers had resolved the parking violation by instructing the driver to move and allowing the vehicle to depart, they had "complet[ed] the 'mission' of the investigation." Id. at 354, quoting Rodriguez, 575 U.S. at 355. "[T]he defendant's important interest in personal security from arbitrary police conduct . . . thereafter prevailed," and thus the stop was unreasonable. Daveiga, supra at 354-355.

The circumstances here, by contrast, involve a civil traffic infraction that was not resolved immediately. While we observed in Daveiga, 489 Mass. at 353-354, that "police authority to conduct a motor vehicle stop on the basis of an observed traffic violation terminates" after an "unreasonable delay[]," we have not previously had occasion to consider the reasonableness of a delayed traffic stop.

As the United States Supreme Court recognized in holding that the Fourth Amendment permits investigatory traffic stops on

reasonable suspicion that an occupant "was involved in or is wanted in connection with a completed felony," the balance of interests between "the nature and quality of the intrusion on personal security" posed by a stop and "the importance of the governmental interests alleged to justify the intrusion" may shift with the passage of time.  United States v. Hensley, 469 U.S. 221, 228-229 (1985).  Such is the case for traffic stops claimed to be justified by a past civil motor vehicle infraction.  With respect to the strong government interest in ensuring traffic safety, "[p]ublic safety may be less threatened by a [driver] in a past [incident] who now appears to be going about his lawful business than it is by a [driver] who is currently in the process of violating the law," id. at 228, and whose infraction may indicate, for example, an ongoing threat to public safety from operating while under the influence of alcohol or drugs.

Regarding the defendant's interests, while a traffic stop conducted immediately upon observing a traffic violation "cannot be 'arbitrary,' because it is predicated on a driver violating a traffic law," Buckley, 478 Mass. at 869, the passage of time after such a violation increases the possibility of arbitrary police conduct, see Hensley, 469 U.S. at 228-229, citing Brown v. Texas, 443 U.S. 47, 51 (1979).  See Brown, supra ("central concern" in assessing seizures short of arrest is "to assure

that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field").  The risk of arbitrary police conduct is heightened in the context of civil traffic infractions, because "[t]he nature of traffic citations renders them uniquely suited to manipulation and misuse."  Commonwealth v. Pappas, 384 Mass. 428, 431 (1981) (discussing "normally fleeting and nonserious nature of most traffic infractions").  See Commonwealth v. Long, 485 Mass. 711, 739 (2020) (Budd, J., concurring), quoting LaFave, The "Routine Traffic Stop" from Start to Finish:  Too Much "Routine," Not Enough Fourth Amendment, 102 Mich. L. Rev. 1843, 1853 (2004) (collecting statistics illustrating that "[v]ery few drivers can traverse any appreciable distance without violating some traffic regulation").  Indeed, in part "to prevent such abuses by eliminating unreasonable or unnecessary delay," Pappas, supra, our Legislature has provided a defense to "automobile law violations" -- whether civil or criminal -- where a citation is not issued "at the time and place of the violation," subject only to limited exceptions, Commonwealth v. Foley, 496 Mass. 320, 324 (2025), quoting G. L. c. 90C, § 2.

Acknowledging the salience of the passage of time in this context and guided by the touchstone of reasonableness under the Fourth Amendment, other courts presented with claims that delay

in conducting a traffic stop for a motor vehicle violation rendered the stop unreasonable have considered all of the circumstances surrounding the stop to determine whether the delay rendered the stop unreasonable, without imposing a "contemporaneity requirement" or other "specific time limitation." United States v. Zuniga, 860 F.3d 276, 281-282 (5th Cir. 2017). These courts have considered factors including the length of the delay, any justification for the delay, and the nature of the violation. See, e.g., id. at 282 (fifteen-minute delay reasonable where officer "radioed information about the turn-signal violation to his colleagues as soon as he saw it occur" and no officer was "in position to stop the vehicle at the time"); United States v. Copeland, 321 F.3d 582, 594-595 (6th Cir. 2003) (stop one mile away from parking violation reasonable where officers "immediately circled the block to further investigate" violation, third-party vehicle "entered the road between the defendants' vehicle and the patrol car," and officers made stop "[o]nce this third vehicle turned off the road"); United States v. Mendonca, 682 F. Supp. 2d 98, 101, 104 (D. Mass. 2010) (one-hour delay following series of traffic violations unreasonable where not required "to gain a tactical advantage" in making stop and where "obvious rationale" for stop was to investigate unrelated conduct; defendant had loaded suspicious packages into vehicle during delay). See also State

v. Myers, 490 So. 2d 700, 701-702, 704 (La. Ct. App. 1986) (same-morning stop reasonable based on police report from neighboring State of driver leaving scene of one-vehicle accident, where "impaired or non-attentive driver . . . might have been dangerous to other traffic").

We agree that, while there is no "specific time limitation" on stopping a driver for a civil traffic violation, "the elapsed time between an observed violation and any subsequent stop must be reasonable upon consideration of the totality of the circumstances." Zuniga, 860 F.3d at 282. Because art. 14 protects defendants from arbitrary police conduct, an observed civil traffic infraction "cannot hang over a suspect indefinitely until a time at which he has engaged in some other suspicious activity that officers believe warrants a pretextual stop." Daveiga, 489 Mass. at 353, quoting Mendonca, 682 F. Supp. 2d at 104. When, based on the totality of the circumstances, there is an unreasonable delay between a traffic infraction and a stop, "the individual['s] interests prevail, and police authority to conduct a motor vehicle stop on the basis of [the] observed traffic violation terminates." Daveiga, supra at 353-354. As with all warrantless seizures, the Commonwealth bears the burden to establish that the stop was reasonable. See Commonwealth v. White, 475 Mass. 583, 587-588 (2016); Commonwealth v. Shields, 402 Mass. 162, 164 (1988).

On the record before us, the Commonwealth has not met its burden. As the motion judge found and the Commonwealth duly emphasizes on appeal, some delay in stopping the defendant was reasonable. It was reasonable on safety grounds for Pieroway not to attempt to stop the defendant's SUV himself at the time of the infraction, given the nature of the unlawful maneuver the defendant had just performed -- passing on the right and then cutting left in front of a line of stopped vehicles -- and the fact that Pieroway was in an unmarked vehicle. In this respect, the circumstances here are unlike those in Mendonca, 682 F. Supp. 2d at 104, where nothing prevented the officer who observed a series of traffic violations from immediately stopping the defendant, and yet the officer instead waited until one hour later to request that the defendant be stopped, after the defendant had loaded suspicious packages into his vehicle. However, the duration of the twenty-four hour delay here is longer than the delay in Mendonca and also the delays of mere minutes to a few hours addressed in other cases. See, e.g., Zuniga, 860 F.3d at 282; Copeland, 321 F.3d at 594-595; Myers, 490 So. 2d at 704. Moreover, the defendant's unlawful maneuver, while unsafe, was not a violation of a "continuing" kind. Cf. United States v. Sandridge, 385 F.3d 1032, 1036 (6th Cir. 2004), cert. denied, 543 U.S. 1129 (2005) (officer had reasonable suspicion to stop driver for "continuing offense" of driving

without license based on license check three weeks earlier, where no facts suggested offense "had ceased" in interim).

The Commonwealth has not provided a reasonable justification for the length of this delay. The record does not make clear why Pieroway did not call for a marked police cruiser to stop the defendant at the time of the defendant's infraction, as Pieroway testified was his regular practice when observing a traffic violation from an unmarked vehicle. The motion judge made no factual finding on this point, and the record does not supply a firm answer. When asked why he did not call for a marked vehicle that day, Pieroway gave a one-word reply of "[s]afety." Pressed further, the officer stated only that "[o]n that day, [he] did not [have any intention of trying to stop the SUV]."

The manner in which the defendant was stopped the following day underscores the lack of explanation for the delay's duration. Feeney observed the defendant as he left a residence, entered the SUV, and drove away. Once Pieroway located the defendant based on Feeney's radio communications, Pieroway, who again was traveling in an unmarked vehicle, requested that a marked cruiser stop the defendant, and other officers carried out Pieroway's request. While the Commonwealth notes that Pieroway thus summoned a marked cruiser "the first time" he observed the defendant's SUV after losing sight of it the day

before, the Commonwealth has not established any reason why Pieroway did not call a marked cruiser upon observing the infraction the day before, and yet did take this same step after a delay of twenty-four hours.

Although the Commonwealth asserts that this case is unlike Mendonca, 682 F. Supp. 2d at 101, 104, because "Officer Pieroway did not choose to delay the traffic stop so that he could continue surveilling the defendant," the motion judge made no such factual finding, and, as we have said, the record is unclear as to why the call for a marked cruiser to stop the defendant did not occur until twenty-four hours after the infraction, as surveillance of the defendant continued.  To be sure, unlike in Mendonca, supra, Pieroway's own surveillance of the defendant did not continue immediately after the defendant's traffic violation, and there is no evidence akin to police observation of a suspicious package being loaded into the defendant's SUV in the interim between the infraction and Pieroway's call for a marked cruiser to stop the defendant the following day.  But, where the Commonwealth bears the burden of showing that the stop was reasonable, the absence of evidence regarding the reason for this twenty-four hour delay does not inure to the Commonwealth's benefit.

As the defendant emphasizes, the record does support the judge's finding that the stop for the traffic infraction was a

pretext intended to advance a drug investigation; indeed, Pieroway expressly stated over the police radio that he was "looking to stop a vehicle for [a] drug investigation."  Such an ulterior motive on the part of an officer does not deprive a traffic stop for an observed motor vehicle violation of its objective justification.  See Buckley, 478 Mass. at 865-866.  Nor, however, does the mere existence of the drug investigation reasonably justify the delay in stopping the defendant for the traffic infraction, and the Commonwealth does not attempt to claim otherwise.  See Daveiga, 489 Mass. at 353, citing Mendonca, 682 F. Supp. 2d at 104.

Considering the totality of the circumstances here, where the Commonwealth has shown that some amount of delay in stopping the defendant for a civil traffic violation was reasonable but has not provided any reasonable justification for a delay lasting twenty-four hours, we conclude that the Commonwealth has not met its burden to show that the stop of the defendant was reasonable.  The defendant's motion to suppress therefore should have been granted.

Conclusion.  So much of the order entered on June 17, 2021, as denied the defendant's motion to suppress is reversed.  The judgment is vacated, the verdict is set aside, and the matter is remanded to the Superior Court.

So ordered.